```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                    CENTRAL DIVISION at LEXINGTON

SPENCER J. CARTER, III           )
                                 )
     Plaintiff,                  )   Civil Action No. 5:10-132-JMH
                                 )
v.                               )
                                 )
                                 )
TOYOTA TSUSHO AMERICA, INC.      )   MEMORANDUM OPINION AND ORDER
                                 )
     Defendant.                  )
```

                    **       **      **      **      **

This matter is before the Court on a Motion for Summary Judgment [Record No. 34] filed by Defendant Toyota Tsusho America, Inc. ("TAI" or "Defendant"). Plaintiff Spencer J. Carter, III ("Carter" or "Plaintiff") responded in opposition to the motion [Record No. 43], to which Defendant filed a reply [Record No. 46]. Subsequently, Plaintiff filed a surreply [Record No. 50], for which leave was granted by the Court.

Plaintiff alleges that: (1) he was terminated because he is African American in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, and also in violation of the Kentucky Civil Rights Act ("KCRA"), KRS § 344.040(1); (2) his termination was based on age (57) in violation of the Age Discrimination in Employment Act ("ADEA"), as amended, and also in violation of the KCRA, KRS § 344.040(1); and (3) TAI failed to promote him based on his race in violation of the KCRA, KRS § 344.040(1).

TAI argues that Plaintiff cannot establish a prima facie case of discrimination for either of his claims because he was not qualified for the position he held, nor was he qualified for the position to which he contends he should have been promoted. Defendant further argues, with respect to Plaintiff's age discrimination claim, that he was not replaced by a substantially younger individual. In the alternative, Defendant argues that Plaintiff cannot rebut TAI's legitimate nondiscriminatory reason for Plaintiff's termination or failure to promote by showing that it was pretextual. Plaintiff counters that he was qualified for the position, that he was treated less favorably than someone outside of the protected class, and that a reasonable jury could conclude that TAI's offered reasons for Plaintiff's termination and failure to promote him were pretext for unlawful discrimination. For the following reasons, Defendant's Motion will be granted.

I.  BACKGROUND

TAI is a corporation engaged in the business of supplying steel and related materials to the automotive manufacturing industry. Plaintiff was hired to the position of General Manager of Information Technology, Assistant Vice President ("AVP of IT") on January 7, 2002, shortly before his fiftieth birthday. It appears, based on the record before the Court, that Plaintiff worked at TAI's Georgetown, Kentucky location throughout his tenure. Prior to his employment with TAI, Carter had worked in the

field of information technology for approximately twenty years. Carter reports that, during that time, he was never fired or forced to resign from a job.

In his position at TAI, Plaintiff was responsible for directing, organizing, planning, and controlling the IT Department in efforts to further the accomplishment of TAI's goals and objectives across all locations. Plaintiff's responsibilities also included coordinating with and guiding other departments to achieve the most productive and cost effective solutions to their IT projects. Plaintiff's leadership position also required him to manage the day-to-day operations of the IT Department, which included timely execution of projects, customer service and satisfaction, budgeting, and working with human resources on hiring and firing decisions.

William Wiener, who had been involved in the decision to hire Carter, became Carter's direct supervisor when Wiener was promoted to Chief Operating Officer ("COO") shortly after Carter was hired. Wiener was based in New York but, according to Plaintiff, traveled to Georgetown on a monthly basis. TAI contends that Carter was a poor leader who failed to meet goals, lacked effective organization, lacked certain leadership qualities and failed to create and implement a forward vision for his department. Objective analysis, such as a 360 degree assessment of leadership indicated that Carter lacked "strategy integration with visioning,

strategic thinking, and managing change." TAI reports that, during Carter's employment, TAI grew and the goals and objectives for Carter's position changed, as well. There was no single incident or failure by Carter that led to his termination. Instead, TAI contends, it was Carter's lack of leadership skills that led to his termination. According to TAI, by the end of his tenure, both Carter's supervisors and his subordinates were unhappy with his performance.

While Carter recalls that, over the years, Wiener evaluated his performance as "meeting expectations or better," Wiener testified that he had given Carter "midline" ratings. Carter argues that his regular salary increases, while under Wiener's supervision, objectively demonstrate that Wiener was evaluating his job performance favorably. In 2007, TAI arranged for Carter to undergo an evaluation and coaching program to address performance deficiencies with an external consultant, Lisa Morgan with Right Management Consultants. Carter contends, and TAI does not dispute, that this program was not punitive in nature. Rather, it was viewed as an investment that TAI made in certain employees, many of whom were eventually promoted. Defendant maintains, however, that in Plaintiff's case, the program was implemented to address significant performance deficiencies – not simply to make a good employee better, as Plaintiff contends.

During the coaching process, Wiener identified communication

4

and vision as areas in which Carter needed to improve. The coaching program was designed to last approximately six months and consisted of an assessment and development phase. During the assessment phase, based on Wiener's evaluation and objective evaluations administered by Ms. Morgan, Carter was to focus on improving in areas of inspirational leadership, managing change, and developing a strategy for the IT Department. It is undisputed that Carter was engaged in the coaching process and that he made progress during the program. While Plaintiff and Morgan were working together, however, several problems with communication, execution, and organization emerged that required more immediate attention. The initial goals, therefore, were abandoned so that Ms. Morgan could begin working with Carter on these more pressing areas. Carter admitted that he recognized his need to improve in these specific skills. The coaching process ultimately provided Carter with limited improvement. In further support of its position, TAI notes that in 2007, it used an outside consulting company to administer and compile the results of a Viewpoint Employee Opinion Survey. Fewer of the employees working under Carter's supervision responded favorably to the following question than employees with other supervisors – "How satisfied are you with the performance of the department head?" Carter, TAI contends, made only made small, ineffective changes in response to the relatively negative review. The parties do not reveal whether

any other such surveys were conducted during Carter's employment.

In April, 2007, Larry Keiser, who was Assistant Vice President/General Manager of Manufacturing and Business Support Services, became Vice President of Internal Audit and Consulting. In his new position, Keiser was responsible for evaluating and improving the effectiveness of TAI's risk management, control and governance policies, as well as supervising audit staff and controlling external consulting engagements. In late 2007, after Keiser was in his new position for several months, the reporting structure for IT was modified so that the IT Department reported through Keiser to Wiener. Keiser's title also changed to Vice President/General Manager of Management Systems, Internal Audit and Consulting. Thus, Keiser became Carter's immediate supervisor in December 2007. This meant that Carter's direct supervisor was now based in Georgetown, as opposed to Wiener, who spent most of his time in New York. Whereas Wiener's supervision of Carter largely took place from a distance, Keiser had the opportunity to observe Carter's performance on a daily basis and to communicate with Carter and his subordinates personally.

It is to this position – Vice President/General Manager of Management Systems, Internal Audit and Consulting – that Carter argues he should have been promoted. TAI argues, however, that this was not an open position. Instead, it was merely a restructuring which allowed Keiser to assume additional

responsibilities.  TAI also points out, and Carter admits, that an external audit of the IT department was his only exposure to an audit, and that he did not have any formal training or background in audit or internal control processes.

Keiser's first review of Carter's performance was in February, 2008, which was a few months after Keiser became Carter's supervisor.  Keiser originally gave Carter an overall rating of "B", or "Below Expectations," meaning that Carter "meets some, but not all, expectations or acceptable levels.  Performance is below that of peers. . .[and] fall[s] short of expectations set in plan." Apparently, Keiser and Wiener discussed the evaluation before it was finalized, at which point, Wiener testified, he did not believe that the evaluation merited a "B" rating.  Subsequently, Keiser increased the overall rating to "M—", indicating a rating below "M" which is "meets expectations."  Many of the same recurring skills were identified for improvement, such as initiative and acceptance of responsibility.  Also, Keiser noted that Carter needed to work on being proactive with respect to IT strategy and organization, and that he needed to set a better tone for the department.  Carter and Keiser met to discuss the evaluation and Carter's written comments were included in the final report.

While Carter argues that the alleged reasons for which he was fired are all subjective, none of TAI's offered subjective reasons explicitly relate to race or age. Plaintiff admits that neither

7

Wiener nor Keiser, nor any one else at TAI, ever made any comments to him about race or age that he found offensive. Keiser recommended the termination in the fall of 2008, which was approved by Wiener, and then carried out on January, 2009 on Carter's fifty-seventh birthday. He was replaced by David Curley, a forty-eight year old Caucasian male.

## II. APPLICABLE STANDARD OF REVIEW

The standard for summary judgment mirrors the standard for directed verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251 (1986). A grant of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The moving party bears the initial burden to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). This burden is met simply by showing the court that there is an absence of evidence on a material fact on which the nonmoving party has the ultimate burden of proof at trial. *Id.* at 325. The burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy,* 39 F.3d 1339, 1347 (6th Cir. 1994). A material fact is one that may affect the outcome of the

issue at trial, as determined by substantive law. *See Niemi v. NHK Spring Co., Ltd.,* 543 F.3d 294, 298 (6th Cir. 2008). A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows "that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 249; *Summers v. Leis,* 368 F.3d 881, 885 (6th Cir. 2004).

The judge's function is not to weigh the evidence, but to decide whether there are genuine issues for trial. *Anderson,* 477 U.S. at 249; *Multimedia 2000, Inc. v. Attard,* 374 F.3d 377, 380 (6th Cir. 2004). Although the evidence should be construed in the light most favorable to the nonmoving party, *Anderson,* 477 U.S. at 255; *Summers,* 368 F.3d at 885, the nonmoving party must do more than demonstrate that there is a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

**III. DISCUSSION**

    **A. Because Plaintiff fails to raise a genuine issue of material fact as to whether Defendant's legitimate, non-discriminatory reason for terminating his employment was actually pretext for discrimination based on age and/or race, Defendant is entitled to summary judgment.**

Because Plaintiff presents no direct evidence of discrimination, his claims must proceed under the inferential test propounded by the Supreme Court in *McDonnell Douglas v. Green,* 411 U.S. 792 (1973). This framework applies not only to claims under Title VII, but also to claims under the ADEA and the Kentucky Civil

9

Rights Act. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577 (6th Cir. 1992); *Hamilton v. Gen. Elec. Co.*, 556 F.3d 428 (6th Cir. 2009). Under this tripartite test, Plaintiff must – as an initial matter – establish a prima facie case of discrimination by demonstrating that: (1) he is a member of a protected class; (2) that he suffered an adverse employment action; (3) that he was qualified for the position he held; and (4) that he was replaced by someone from outside the protected class (or someone substantially younger, in the case of age discrimination) or that he was treated differently than similarly-situated, non-protected employees. *See Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006); *Bush v. Dictaphone Corp.*, 161 F.3d 363, 368 (6th Cir. 1998). If a plaintiff is able to establish a prima facie case of discrimination, the burden then shifts to the employer to produce a legitimate, non-discriminatory reason for the adverse employment action. *McDonnell Douglas,* 411 U.S. at 802-03. If the employer does so, the burden shifts back to the plaintiff to establish that the proffered reason is actually a pretext for discrimination. *Id.* at 804. This can be accomplished by demonstrating that the proffered reason had no basis in fact, did not actually motivate the decision, or was insufficient to motivate the decision. *Manzer v. Diamond Shamrock Chems.*, 29 F.3d 1078, 1084 (6th Cir. 1994).

While it is undisputed that Plaintiff has satisfied the first two prongs of his prima facie case, Defendant contends that Carter

was not qualified for his position because he was not meeting TAI's legitimate expectations and, with respect to his age discrimination claim, that he was not replaced by someone substantially younger. As for whether Carter was qualified, the Court is cognizant that, for purposes of analyzing whether Plaintiff has established a prima facie case, Defendant's alleged nondiscriminatory reason (here, poor performance) may not be considered.  *Wexler v. White's Fine Furniture,* 317 F.3d 564, 574-75 (6th Cir. 2003).  Further, with respect to the prima facie case of age discrimination, it is undisputed that fifty-seven year old Carter was replaced by a forty-eight year old individual.  The parties disagree as to whether the nine-year age difference renders Plaintiff's replacement "substantially younger" than him.  "Age differences of ten years or more have generally been held to be sufficiently substantial to meet the requirement of the fourth part of age discrimination prima facie case."  *Grosjean v. First Energy Corp.,* 349 F.3d 332, 336 (6th Cir. 2003).  The *Grosjean* Court recognized, however, that in a handful of cases, age differences of eight or nine years have been sufficient to render a replacement employee "substantially younger."  *See id.* at  339 (citing *Cicero v. Borg-Warner Auto.,* 280 F.3d 579, 588 (6th Cir. 2002)(whether forty-three year old was substantially younger than fifty-one year old was question for jury); *Tarshis v. Riese Org.,* 211 F.3d 30, 38 (2d Cir. 2000)(replacement of sixty-seven year old with fifty-nine year old

11

sufficient); *Fisher v. Vassar Coll.,* 70 F.3d 1420, 1450-51 (2d Cir. 1995)(forty-eight and forty-four year old professors were substantially younger than fifty-three year old)).

Assuming, *arguendo,* that Plaintiff is able to establish a prima facie case of discrimination based on race or age, Defendant has produced a legitimate, non-discriminatory reason for terminating his employment. Specifically, Defendant cites numerous performance issues as its reason for terminating Plaintiff's employment. Although the parties dispute the reason for the initiation of the 2007 "coaching program," Defendant has provided other proof indicating that Plaintiff had performance deficiencies, which reasonably could have resulted in his termination. In support of its position, Defendant cites objective evidence, including the results of the 360 Degree Feedback Evaluation and the 2007 Viewpoint Employee Opinion Survey. Additionally, Plaintiff concedes that his coaching program was overhauled, early on, to remedy immediate deficiencies in his performance as AVP of IT. Further, Plaintiff acknowledged that much of Wiener's criticism of his job performance was not unfair. In fact, Plaintiff does not directly dispute many of Keiser's criticisms of him, either. Rather, he characterizes them as vague and subjective, and argues that Keiser focused on the negatives and did not give him due credit for his achievements.

Plaintiff has failed to offer sufficient evidence to rebut

12

Defendant's legitimate non-discriminatory reason for terminating his employment and, thus, has not created a genuine issue for trial. He does not argue that Defendant's proffered reason has no basis in fact, nor does he provide evidence to demonstrate that the proffered reason was insufficient to motivate his termination. *See Manzer,* 29 F.3d at 1084 (typically, proof that other employees engaged in substantially similar conduct as plaintiff without facing adverse employment action). Rather, Plaintiff attempts to demonstrate that the proffered reason was not the actual reason for his termination. For his claims to survive Defendant's motion for summary judgment, Plaintiff is required to provide some proof suggesting that, not only is Defendant's proffered reason not the real reason Plaintiff was fired, but that the actual reason was discrimination. *Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 804-05 (6th Cir. 1994). "[E]stablishing that the employer's reason was a pretext requires that a plaintiff *do more than simply impugn the legitimacy of the asserted justification*; in addition, the plaintiff must also adduce evidence of the employer's discriminatory animus . . ." *Id.* (emphasis added)(citing *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 513-15 (1993)). In other words, "[A] reason cannot be proved to be a pretext for discrimination unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Center,* 509 U.S. at 515 (internal quotation marks omitted)(emphasis

13

in original).

Plaintiff concedes that he is aware of no race or age-related comments made by anyone at TAI. Further, Plaintiff provides no evidence to suggest that he was treated less favorably than other similarly-situated employees or that other members of the protected classes faced discrimination at the hands of Defendant. Rather, Plaintiff relies upon his unsubstantiated subjective beliefs. For example, when asked why he thought Keiser's criticism of his performance was based on race, Plaintiff responded, "I don't think he was after anybody else." When asked why he thought Keiser was biased against him because of his age, Plaintiff stated, "I think he was looking for a person that was younger to fill my slot. . . . [B]ecause of his attitudes toward me. . . [h]is hostility, his unreasonableness, treating me in a very demeaning and degrading matter (sic). . . . Ignoring my accomplishments and not recognizing the things that I have done." Viewing these statements in a light most favorable to Plaintiff, one could infer that Keiser disliked Plaintiff or, perhaps, treated him in a less than cordial manner. Conclusory allegations of discrimination are insufficient, however, to sustain a claim under Title VII. *See Allen v. Mich. Dep't of Corrections,* 165 F.3d 405, 415 (6th Cir. 1999). Plaintiff has presented no evidence, aside from the facts purported to establish his prima facie case, which suggests that discrimination based on race or age was at play during his employment at TAI or in

14

the circumstances surrounding his termination. *See Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 589 (6th Cir. 2002)(Where plaintiff attempts to demonstrate that proffered reasons did not actually motivate discharge, plaintiff "may not simply rely on his prima facie evidence.")

Plaintiff attempts to cast doubt on Defendant's proffered reason for firing him by demonstrating that he has had a lengthy and successful career in IT and that Defendant had been satisfied with his performance for years prior to his termination.[1] Simply because Defendant had, at one time, been satisfied with Plaintiff's performance, however, does not compel the conclusion that his work performance continued to meet Defendant's legitimate expectations. *See Strickland v. Fed. Express Corp.*, 45 F. App'x 421, 424 (6th Cir. 2002)(unpublished opinion)(noting that prior satisfactory performance reviews may suffer from staleness – the employee's performance may change and/or the employer's expectations may change). Aside from the fact that TAI had grown and its IT needs had expanded, the Court notes what it finds to be a logical explanation for Plaintiff's feeling that Keiser, as opposed to Mr. Wiener, was especially critical of Plaintiff's work performance.

---

[1] Plaintiff urges the Court to make an adverse inference from what it alleges is Defendant's spoliation of Carter's previous favorable performance reviews, rendered by Mr. Wiener. The Court notes that, even if favorable written reviews are presumed to exist, for the reasons described above, the Court's resolution of this issue does not change.

15

Prior to Keiser's becoming Vice President/General Manager of Management Systems, Internal Audit and Consulting, Plaintiff's direct supervisor was located in New York while Plaintiff was working in Georgetown, Kentucky. Although Plaintiff saw Wiener occasionally, the interaction between the two men was limited and was mainly through email and telephone calls. Wiener's absence from the company's Georgetown location made it impossible for him to monitor Plaintiff's day-to-day performance to the same degree as Keiser, once he became Plaintiff's supervisor. Plaintiff asks the Court to second guess Defendant's employment decision – not because he offers admissible evidence which indicates that he was fired because of his race or his age – but because he feels that he was treated unfairly. The Sixth Circuit Court of Appeals has emphasized that the court's "role is to prevent unlawful hiring practices, not to act as a super personnel department that second guesses employers' business judgments." *Hedrick v. Western Reserve Care Sys.,* 355 F.3d 444, 462 (6th Cir. 2004)(internal quotation marks omitted). Further, employers are entitled to increased deference when it comes to employment decisions involving management-level employees such as Carter and Keiser. *See Wren v. Gould,* 808 F.2d 493, 502 (6th Cir. 1987). Accordingly, Defendant's motion for summary judgment, with respect to Plaintiff's unlawful termination claims, will be granted.

16

> **B. Because Plaintiff fails to raise a genuine issue of material fact as to whether Defendant failed to promote him based on his race, summary judgment for Defendant is proper with respect to Plaintiff's failure-to-promote claim.**

Failure-to-promote claims are also analyzed under the familiar burden-shifting framework of *McDonnell Douglas*.[2] See *Nguyen v. City of Cleveland,* 229 F.3d 559, 562-63 (6th Cir. 2000)(citing *McDonnell Douglas,* 411 U.S. at 802-03). To establish a prima facie case of discrimination based upon a failure to promote, Plaintiff must show that:

> (1) he is a member of a protected class; (2) he applied for and was qualified for a promotion; (3) he was considered for and denied the promotion; and (4) other employees of similar qualification who were not members of the protected class received promotions at the time the plaintiff's request for promotion was denied.

*Id.* Defendant contends that Plaintiff cannot make out a prima facie case because no open position existed and, even if the position were open, Plaintiff was not qualified for it. It is undisputed that the position of Vice President/General Manager of Management Systems, Internal Audit and Consulting was not posted. Assuming, *arguendo,* as Plaintiff contends, that he is not required to have applied for the position and that he otherwise has established a prima facie case of discrimination based on Defendant's failure to promote him, his claim ultimately fails.

---

[2] Although Plaintiff asserts his failure-to-promote claim via the KCRA only, the same analysis applies as if it were brought under Title VII or the ADEA. *See Johnson v. Box USA Group, Inc.,* 208 F. Supp. 2d 737, 740-41 (W.D. Ky. 2002).

17

Defendant has proffered several legitimate, non-discriminatory reasons for its failure to promote Plaintiff to the position of Vice President/General Manager of Management Systems, Internal Audit and Consulting.  First, Defendant has demonstrated, and Plaintiff has failed to rebut, that this was not an open position. Rather, Keiser, who was already a vice president, assumed expanded duties and his title was modified to reflect the changes.  Although Keiser did receive a pay raise for his expanded position, he retained all of the same duties that he had under his previous title.  As further support for this argument, there is no suggestion that a vacant vice president position arose as the result of Keiser's taking on the new position.  Further, while Plaintiff testified that he believed that he could do the job, the undisputed facts reflect that he actually had very limited experience with the auditing aspect of the position.  Keiser, on the other hand, was experienced in both auditing and IT work.

As with his wrongful termination claims, Plaintiff has offered virtually no evidence to rebut Defendant's legitimate non-discriminatory reasons, other than his own subjective beliefs as to why he was not given the position.  Plaintiff's own unsubstantiated claims are insufficient to sustain his burden to avoid summary judgment for Defendant.  *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992)("[C]onclusory allegations and subjective beliefs are wholly insufficient evidence to establish a claim of

discrimination as a matter of law."). Accordingly, Defendant's motion for summary judgment, with respect to Plaintiff's failure-to-promote claim, will be granted.

### III. CONCLUSION

**IT IS ORDERED** that, for the foregoing reasons, Defendant's motion for summary judgment, [DE 34], is hereby **GRANTED.**

This the 9th day of March, 2012.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge

19